(Opinion published 55 N. W. Rep. 816.)

---

AUGUST JOHNSON vs. NORTHWESTERN TELEPHONE EXCHANGE Co.

Argued June 2, 1893. Affirmed June 29, 1893.

**Evidence Considered.**

*Held*, that the evidence was not such as to require a finding that the falling of a telephone pole was caused by the *manner* in which certain guy wires were removed.

**The Questions of Law were Decided on a Former Appeal.**

Also, that all other questions in the case are *res adjudicata*, under the decision in a former appeal.

Appeal by defendant, Northwestern Telephone Exchange Company, from an order of the District Court of Hennepin County, *Charles M. Pond*, J., made September 27, 1892, denying its motion for a new trial.

The plaintiff, August Johnson, brought this action to recover damages for personal injuries he received on account of the negligence of the defendant. The evidence tended to show that defendant erected poles with cross arms, and strung its telephone wires thereon in Central Avenue, a public street in the business portion of East Minneapolis. The weight of wire on each pole was about 400 pounds. One of the poles bearing 114 wires stood at No. 415 in a curve in the street. This pole had become rotten around the outside near the ground, and had not sufficient strength to withstand the weight and lateral stress of these wires. The plaintiff on November 11, 1890, was driving along this street upon a wood-cart when this pole broke at the curb, and fell into, and across, the street, carrying the wires with it. The pole struck the rear part of the wood-cart and smashed it, and plaintiff was thrown to the ground and injured. The pole was a Norway pine, 55 feet high, set in 1887, six feet in the ground. Six guy wires from its top were attached to Shadewald's brick building, and had so remained, with his assent, three years. Plaintiff's evidence tended to show that, about a month before the accident, Shadewald notified defendant's agent to remove these guys from his building right away, saying: "If you don't take them off, I will cut them off." The agent replied: "Well, all right. Take them off." On the day of the accident, Shadewald cut these guys with a file, and, as he did so, the pole fell and plaintiff was injured.

After this court had reversed the order refusing a new trial in this action, (48 Minn. 433,) the issues were again tried, June 24, 1892, and plaintiff had a verdict for $3,500. A case was made containing all the evidence, rulings and exceptions, and on it and the records and files defendant moved for a new trial, mainly on the ground, that the evidence established, beyond dispute, that Shadewald notified the company that if it removed his telephone, it must also remove the guy wires from his building; that two hours thereafter the company took out his telephone for nonpayment of $13.15 rent due, and he immediately filed off the guy wires, and the pole fell; that no adequate time was allowed the company to protect its pole, and hence it was not guilty of negligence; and that plaintiff's only remedy was against Shadewald. The court refused a new trial,

and defendant appeals.   Here the defendant strenuously contested the correctness of the former decision that, on the facts, negligence could be imputed to it, and asked a reconsideration of that question.

*Eustis & Morgan,* for appellant.

The evidence is without conflict, that on the occasion of the accident, Shadewald, being offended with defendant on account of the removal of a telephone instrument from his building, in anger, and without making any attempt to remove the wires from his building in a proper or prudent manner, and without any notice whatever to defendant that he contemplated doing so, cut them with a file.   The inevitable effect of this willful and reckless act was to break the pole, and to carry down the line in either direction.   Whether the pole was new or old, sound or rotten, the sudden jerk and strain imposed upon it at the top was sufficient to break any pole used in the construction of telephone or telegraph lines.   It also appears without dispute in the evidence that Shadewald could have taken the guy wires off from his building without breaking down the pole. The proper method was to attach a pair of pulley blocks to the pole and draw it sufficiently tight to take the strain off the wires, then to take the wires off and slacken the pulley back until the strain rested gradually on the pole.   Shadewald's conduct caused the accident.   Defendant did nothing, nor did it neglect anything which was a proximate cause of the plaintiff's injuries.

The complaint charges negligence on the part of the defendant for no other act or thing than that it suffered and permitted the pole to become rotten and worn out, and not of sufficient strength to bear the weight and stress of all the wires then and there strung on its cross arms.   This charge cannot by any fair or just interpretation be said to cover negligence on the part of the defendant in not anticipating that Shadewald would wantonly destroy its property in the manner disclosed by the evidence or—what is the same thing—that he would willfully cut the wires, when to do so was not only inevitably dangerous to the public passing along the street, but alike destructive to a portion of defendant's line not on his premises at all.   The evidence shows beyond all dispute that the line—including the pole in question—was abundantly safe on the day of the accident, so far as material and construction were con-

cerned, and that no strain to be imposed upon it in the ordinary course of business, and no force short of breaking or severing the guys, could throw the line into the street. · When this appeared, as it does appear from all the evidence in the case, defendant was entitled to a verdict, and it was error to refuse it.

Unless it can be affirmed as the law of this State that a plaintiff can, against a defendant's objection and exception, prove and recover upon a cause of action not alleged in the complaint, the very existence of which is not suggested even by inference in the pleadings, the court should have excluded the evidence offered by the plaintiff to the effect that Shadewald had revoked the license to the defendant to fasten the wires upon his building, a sufficient time before the accident to have enabled defendant to reset the pole. 1878 G. S. ch. 66, § 122; *O'Brien* v. *City of St. Paul*, 18 Minn. 176, (Gil. 163;) *Leighton* v. *Grant*, 20 Minn. 345, (Gil. 298;) *Mayor* v. *Humphries*, 1 Car. & P. 251; *Toledo, W. & W. Ry. Co.* v. *Beggs*, 85 Ill. 80.

Shadewald had not the right to do more than to remove the wires from his building in a prudent manner, doing no unnecessary damage to defendant's property. *Gates* v. *Blincoe*, 2 Dana, 158; *Dyer* v. *Depui*, 5 Whart. 584; *Welch* v. *Stowell*, 2 Doug. 332; *Wright* v. *Moore*, 38 Ala. 599.

Again, according to his own statement, Shadewald was quite willing the wires should remain attached to his building provided only the defendant did not remove its telephone, and treating his direction to defendant's employee who was sent to remove the telephone from the building, as a revocation of the license, the defendant was entitled to a reasonable time, after thus removing the instrument, in which to remove the wires and preserve its property, before it would be guilty of negligence on account of Shadewald's interference with them. *Barnes* v. *Barnes*, 6 Vt. 388; *Ashmun* v. *Williams*, 8 Pick. 402; *Mellor* v. *Watkins*, L. R. 9 Q. B. 400.

It is only when the negligence of the defendant consists in acts done or omitted, which in and of themselves have created a danger, or have set in motion a natural force sufficient without further interference to cause the injury, that defendant is responsible. If the negligence of a third party subsequently intervening makes

a harmless act effective to cause the injury, the defendant is not responsible.   Had the defendant negligently done or omitted .something which weakened the line and created a danger that it might fall into the street if meddled with, though as thus left it would not have fallen, and thereafter the negligence of Shadewald inter-vened, not sufficient in and of itself, but sufficient because of what defendant had done before to cause the line to fall, it would then be a case for the application of the rule embodied in the opinion given on the first appeal.   There is no ingenuity of argument or subtlety of distinction that can make the neglect to remove the wires an immediate cause of the falling of the pole.   The act of Shadewald was not only the direct and immediate cause, but it was the sole cause, of the injury.

That the neglect to remove the wires instanter made the pole insufficient in strength, and caused the injury complained of, is palpably untrue; that such neglect rendered the line insecure is true only in the sense that all property is insecure in the presence of such lawlessness as Shadewald exhibited in this case.   Unless the court is prepared to hold as the law that Shadewald's willful and reckless conduct "was likely, according to the general experi-ence," to follow his withdrawal of the license, so that defendant was bound at its peril to assume, in the absence of all notice of such intention on his part, that he would proceed to destroy its property in the willful manner disclosed by the evidence, the verdict must be set aside.   The wires being on the building after the license was withdrawn was no more a cause of the injury than was the existence of the poles in the street.   Both were conditions, but neither was a cause.   So that the case comes to this: admitting that defendant was bound to anticipate that Shadewald might remove the wires, still it was not bound, even as to third parties, to anticipate that he would do so in a reckless and willful manner. *Lindsay* v. *Winona & St. P. R. Co.,* 29 Minn. 411; Wharton, Neg. §§ 134, 138, 139.

We insist that defendant was no more bound to anticipate that Shadewald would act negligently after the revocation of the license, than that he would thus act before, or that some third party would so act that the line would be destroyed and the public put in peril. To say that Shadewald's conduct was likely, in the usual and natural

order of things, to follow his revocation of the license, is equivalent to saying that it is usual and natural for people to violate the rights of others, and to be guilty of criminal carelessness. *Calef* v. *Thomas*, 81 Ill. 478.

Nothing that defendant had done or omitted to do up to the moment when Shadewald appeared upon the scene, after defendant had removed the telephone, rendered the line insufficient in strength, or in any wise dangerous to the public; on the contrary, the line was in all respects as staunch and strong as when first constructed. If, then, there was any negligence at all on defendant's part—which we deny—it could not have produced any injury or damage to the plaintiff, had it not been for the intervention of a responsible third party, acting willfully and unlawfully. *Moon* v. *Northern Pac R. Co.*, 46 Minn. 106; *Nelson* v. *Chicago, M. & St. P. Ry. Co.*, 30 Minn. 74; *Renner* v. *Canfield*, 36 Minn. 90; *Poland* v. *Earhart*, 70 Iowa, 285; *Armil* v. *Chicago, B. & Q. R. Co.*, 70 Iowa, 130.

The injury to plaintiff was not the natural or probable result of any act or neglect of the defendant, but was the result of the wrongful act of Shadewald. *Carter* v. *Towne*, 103 Mass. 507; *Tutein* v. *Hurley*, 98 Mass. 211; *Bartlett* v. *Boston Gas Light Co.*, 117 Mass. 533; *Fleming* v. *Beck*, 48 Pa. St. 309; *Harrison* v. *Collins*, 86 Pa. St. 153; *Bigelow* v. *Reid*, 51 Me. 325; *Cuff* v. *Newark, etc., Ry. Co.*, 35 N. J. Law, 17; *Milne* v. *Smith*, 2 Dow, 390; *Hofnagle* v. *New York Cent. & H. R. R. Co.*, 55 N. Y. 608; *Sharp* v. *Powell*, L. R. 7 C. P. 253; *Atkinson* v. *Newcastle & G. W. Co.*, L. R. 6 Ex. 404; 2 Ex. D. 441.

*Henry Ebert* and *Chas. A. Ebert*, for respondent.

The question as to the sufficiency of the evidence upon the issue of the defendant's negligence, with all that is necessarily involved in it, is *res adjudicata*. At the first trial of this case, defendant's counsel, after both parties had rested, requested the court to instruct the jury to find a verdict for defendant, upon the ground that the evidence was not sufficient to submit the case to the jury upon the question of defendant's negligence being a proximate cause of plaintiff's injury. This was done. The plaintiff excepted, and afterwards moved for a new trial; the motion was denied, and he

appealed, assigning the said instruction as reversible error. On that appeal, the parties to the action discussed in their respective arguments and briefs every question, both of law and fact, having any legitimate bearing upon the matter in dispute. After such full argument on both sides, this court, in 48 Minn. 432, held, the evidence, as then presented in the record, was sufficient to have warranted the jury in finding the defendant negligent, and this negligence to have been a proximate cause of the injury. On the second trial of the case, the same evidence, without any material variance, was substantially given as upon the first, and still the defendant, when both parties had rested, made the same request as was made upon the first trial, to have the jury instructed to find a verdict for defendant; and now complains that the trial judge refused. The object of this appeal is, to obtain a rehearing and a reexamination of the case in a manner different from that pointed out in the rules governing applications for reargument, and to have this court revise its former ruling upon the sufficiency of the evidence. This, the court, we are sure, will not do. There is absolutely nothing presented why this case should be exempt from the operation of the rule laid down in *Ayer* v. *Stewart,* 16 Minn. 89, (Gil. 77,) "that upon a second appeal in the same case, the same question cannot be reconsidered." *Haven* v. *Neal,* 51 Minn. 94; *Burke* v. *Mathews,* 37 Tex. 73; *Fisher* v. *Police Court of San Diego,* 86 Cal. 158; *Fish* v. *Heinlin,* 8 Minn. 540, (Gil. 483;) *Woodbury* v. *Dorman,* 15 Minn. 341, (Gil. 274.)

MITCHELL, J. After full examination, we are of the opinion that the record contains nothing which at all changes the legal aspect of this case from what it was when here before, and that every question now presented, except perhaps as to state of the evidence upon the question whether the pole would have fallen had Shadewald removed the guys from this building in a proper manner, is *res adjudicata,* under the decision on the former appeal, 48 Minn. 433, (51 N. W. Rep. 225.)

The pole which broke was a "corner pole" situated at an angle in the street, and was subject to the lateral strain of 114 No. 14 line wires strung on the cross-arms, and drawn taut to prevent sagging. The evidence was practically undisputed that the pole was entirely

insufficient to bear this strain, unless supported by guys, or some other similar means of support.

The defendant, for the purpose of showing that it did its duty in the premises, introduced evidence proving that it had, with the license of Shadewald, extended guy wires from the top of the pole to his building on an adjacent lot, and that as thus guyed the pole was perfectly safe, and would not have fallen; that Shadewald cut the guys; and that this was the immediate cause of the falling of the pole. For the same purpose, defendant also introduced evidence tending to prove that Shadewald had not revoked the license a reasonable time before cutting the guys to enable it to secure the pole by other means, and hence that his act in cutting the guys was unlawful, for the consequences of which it was not responsible. On the other hand, the plaintiff introduced evidence tending to prove, and from which the jury might have found, that, a reasonable time before cutting the guys, Shadewald had revoked the license, and required defendant to remove the guys from his building, but that it neglected to do so, or to secure the pole by other means. It is contended that this evidence was inadmissible under the pleadings, and that to admit it was to permit the plaintiff to recover upon a different cause of action from that alleged, which was that the defendant negligently suffered and permitted this pole "to become rotten and worn out, and not of sufficient strength" to bear the weight and strain of the wires strung upon it.

It will be observed that the plaintiff only followed the line of proof adopted by the defendant itself. But an examination of the opinion of this court on the former appeal will show that the admissibility of this evidence under the pleadings is really *res adjudicata* in this case. It was there held that, upon the expiration of a reasonable time after the revocation of the license, Shadewald had a right, as to defendant, to remove the guys from his building; that it became the duty of the defendant, within a reasonable time after the license was withdrawn, to make the pole safe by other means, and that the omission to do so would constitute negligence; that after the license was withdrawn the defendant was in the same situation as if it had never been granted,—in other words, being bound to know that Shadewald had a right to remove the

guys, and might do so, the defendant, in omitting to adopt other methods of making the pole safe, stood in exactly the same position as if it had in the first instance erected the pole, and strung its wires thereon without the support of any guys. Under this view. of the law the admissibility of the evidence under the pleadings must be apparent.

The defendant further contends that the evidence shows that the pole would not have fallen, even with the guys removed, had Shadewald removed them in a proper and reasonably prudent manner, viz. instead of cutting them, and thus throwing the strain on the pole suddenly, attaching blocks so as to release the strain gradually. The proposition of law predicated on this premise is that, even if defendant was bound to anticipate that Shadewald might remove the guys, it was not required to anticipate that he would do it in an improper and negligent manner, and is not responsible for the consequences of his negligence, which, it is claimed, constituted an independent intervening cause, which alone was the proximate cause of plaintiff's injury. Inasmuch as defendant asked for no instructions to the jury on this point, and as no such question was submitted to their consideration in the court's charge,— to which no exception was taken, except to the refusal to direct a verdict,—the question is not in the case, unless the evidence was such as to require a finding in accordance with defendant's contention. While some of defendant's witnesses testified that in their opinion the pole would not have fallen, had Shadewald let the strain come upon it gradually, in the manner suggested, yet in our opinion there was abundant evidence in the case to justify the jury in finding that the inevitable consequence of removing the guys, in any possible manner, without supplying their place with other supports, would have been the falling of the pole. Indeed, when we take into account the great lateral pressure resulting from that number of wires upon a corner pole only 14 inches in diameter at the ground, of comparatively brittle wood, and whose power of resisting the tensile strain on one side, and the compressive strain on the other side, had been materially reduced by dry rot extending from the circumference inward two or three inches, it seems to us that the great preponderance of the evidence is to the effect that the pole must necessarily have fallen when the guys were removed. As

already suggested, every other question in the case is *res adjudi-cata*, under the decision on the former appeal, and it is an established rule in all courts that they will never reverse themselves in the same case except on reargument allowed on petition before the case is remanded to the lower court.   On the former appeal this court held "that, if the pole was likely to fall with the wires cut, then it might be negligence towards those passing in the street to cut them without warning.   But that his [Shadewald's] negligence contributed to the injury does not absolve the defendant.   Suppose the jury had found, as the evidence would have justified, that but for the cutting of the wires the pole would not have fallen, and that it would not have fallen, with the wires cut, but for the neglect of the defendant, after the license was revoked, to make the pole safe,—in other words, that it was the co-operation of defendant's negligence and Shadewald's act that produced the injury,—then it would be a case of concurring negligence, in which case each party guilty of negligence is liable for the result.   The negligence of each is a proximate cause, when the injury would not have occurred but for that negligence."

Personally, I am not prepared to commit myself to the correctness of this doctrine, as applied to the facts of this case.   Undoubtedly, defendant was bound to foresee that Shadewald might remove these guys, but it could not anticipate that he would do it negligently, so as to allow the pole to fall in the street without warning to passers by.   But negligence, not wanton, cannot ordinarily be said to be the proximate cause of an injury, when the negligence (which could not have been reasonably anticipated) of another indipendent human agency has intervened, and directly inflicted the injury.   Hence I am not clear but that, on the state of facts supposed, the negligence of Shadewald would be the *sole proximate* cause of injury.   But, however that may be, the question was settled on the former appeal, and on the second trial the court followed the exact lines laid down by this court.

Order affirmed.

VANDERBURGH, J., absent, took no part.

(Opinion published 55 N. W. Rep. 829.)